IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAMOND FOSTER,<br><br>    Plaintiff,<br><br>    v.<br><br>WARDEN GREGORY WERNER,<br>OFFICER REASON EMERSON,<br>LT. KEVIN WASHINKO, and<br>OFFICER JAMES HENDERSHOT,<br><br>    Defendants. | Civil Action No.: PX-24-774 |

**MEMORANDUM OPINION**

Plaintiff Damond Foster, a Maryland inmate, filed suit under 42 U.S.C. § 1983 against Warden Gregory Werner, Officer Reason Emerson, Lieutenant Kevin Washinko, and Officer James Hendershot.[1] Foster alleges that Defendants failed to protect him from physical harm, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 5. Defendants move to dismiss the Amended Complaint or, alternatively, for summary judgment to be granted in their favor. ECF No. 19. The Court previously advised Foster of his right to oppose the motion, but he filed nothing in response. After careful review, the Court finds no hearing necessary. *See* Local R. 105.6 (D. Md. 2025). For the reasons stated below, the motion, construed as one for summary judgment, is granted.

**I.    Background**

On May 23, 2023, Foster was attacked by at least one other inmate as he emerged from his cell at the Maryland Correctional Institution-Hagerstown. ECF No. 5 at 4. According to the

---

[1] The Clerk is directed to amend the docket to reflect the full and correct spelling for the name of each Defendant.

Amended Complaint, Defendant Officer Emerson did little but "watch" as Foster was stabbed. *Id*. The Amended Complaint further avers that Officer Hendershot and Lieutenant Washinko handcuffed Foster by pulling his arms and then dragged him to the medical unit, exacerbating his wounds. *Id*. at 4-5. Foster also accuses Lieutenant Washinko of concocting a story about having recovered a weapon from Foster. *Id.* at 5.

Defendants have submitted evidence beyond the four corners of the Complaint which the Court summarizes most favorably to Foster. The evidence reflects that Officer Emerson was on duty observing the inmates exiting their cells when he saw another inmate punch and hit Foster in the face. ECF No. 19-4 at 6. Officer Emerson closed all open cell doors, radioed for assistance, and commanded the inmates to stop fighting. ECF Nos. 19-5 & 19-4 at 6. Other inmates gathered around the two fighting inmates, blocking Officer Emerson's view. *Id.* Several additional officers responded immediately. ECF No. 19-5. Foster quickly exited the tier through a main gate. Foster appeared calm but was bleeding from his upper left shoulder near his collarbone. *Id. See also* ECF No. 19-4 at 56-58.

Lieutenant Washinko immediately handcuffed Foster behind his back without incident. ECF Nos. 19-4 at 42 & 19-5. Foster then walked of his own accord with Lieutenant Washinko and Officer Hendershot to the prison infirmary. ECF Nos. 19-4 at 7, 51-52 & 19-5. Once at the infirmary, Lieutenant Washinko patted down Foster and retrieved a 5-inch-long shank from Foster's pocket. ECF No. 19-4 at 7, *see also id.* at 67-68. Foster was transported to Meritus Medical Center for additional treatment.

The Department of Public Safety and Correctional Services ("DPSCS") Intelligence & Investigative Division ("IID") opened an immediate investigation. ECF No. 19-4. An IID investigator interviewed Foster at the infirmary and photographed his wounds. *Id*. at 6, *see also*

47-51. Foster described that two inmates hit him, but he could not identify the attackers and, regardless, would not testify in a criminal proceeding because he did not want further problems while incarcerated. *Id*.

The investigator ultimately identified one of the attackers and found no evidence that the attack was gang related. ECF No. 19-4 at 6. The investigator next presented the incident to Washington County Deputy State's Attorney who declined to pursue charges against Foster's attacker, in part because Foster decided he would not cooperate. ECF No. 19-4 at 8. But the State's Attorney did pursue criminal charges against Foster for illegally possessing a weapon at a place of confinement. *Id.*, *see also id.* at 72-75. Foster was also charged with institutional infractions, namely engaging in a disruptive act, assault and battery, and disobeying an order. ECF No. 1-1 at 1. Foster admitted guilt to two of the three infractions and received 20 days of segregation and a loss of 60 days good conduct credits. ECF No. 1-4 at 3.

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.

Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Foster was placed on notice that Defendants sought summary judgment in their favor and was given ample opportunity to respond. ECF Nos. 19 & 20. Accordingly, the Court treats the sufficiency of the claims under the summary judgment standard. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III.     Analysis

#### A.     Failure to Exhaust Administrative Remedies

As a threshold matter, Defendants argue that the Amended Complaint should be dismissed because Foster failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e is not a jurisdictional prerequisite, a plaintiff must nonetheless exhaust before the court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). *See also Ross v. Blake*, 578 U.S. 632, 639 (2016).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 933 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross v.* 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *see also Kaba*, 458 F.3d at 684.

DPSCS implements a well-defined administrative grievance process for inmates. *See generally* Md. Code Ann. (2023 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201, *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). An inmate first must file an ARP with the

Warden where he is confined, and if the ARP is denied, the inmate must next appeal the denial to the Commissioner of Correction.  If the Commissioner of Correction finds against the inmate, the inmate next must file a grievance with the Incarcerated Individual Grievance Office ("IIGO"). C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B.  If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

Defendants singularly maintain that the Amended Complaint must be dismissed for lack of exhaustion because evidently Foster has never appealed any ARPs.  ECF No. 19-3 at ¶¶ 1, 4.  But the mere absence of an appeal does not demonstrate a lack of exhaustion for Foster.  This is because the administrative remedy scheme is "unavailable" during the pendency of an IID investigation.  *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023).  In fact, while IID an investigation is ongoing, any contemporaneous ARP is automatically dismissed pursuant to COMAR 12.02.28.11(B)(h).  *Id.*  Administrative exhaustion requirements in this circumstance amount to "nothing but 'dead end[s]' that are 'practically speaking, incapable of use.'" *Id.* at 380 (citing *Ross*, 578 U.S. at 643-44).  Thus, because an IID was pending, the lack of an ARP appeal alone does not support dismissal for failure to exhaust administrative remedies.

The Court turns next to Defendants' merits arguments.

### B. Warden Werner

Foster pursues an Eighth Amendment claim against Warden Werner based solely on the Warden's alleged failure to properly train officers to protect inmates from violence.  ECF No. 5 at 5.  A mere negligent failure to provide adequate training is insufficient to confer supervisory liability for a constitutional violation under 42 U.S.C. § 1983.  *Baynard v. Malone*, 268 F.3d 228,

235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Rather, a plaintiff must adduce some evidence that (1) the supervisor had actual or constructive knowledge that his subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Nothing in the Amended Complaint or in the record satisfies this burden. The Amended Complaint merely alleges in conclusory fashion that the Warden offered inadequate training to officers pertaining to violence control. Even when taking the complaint facts as true and most favorably to Foster, nothing articulates what the Warden did or did not do related to training, or that he acted with deliberate indifference to how his subordinates carried out their duties. Accordingly, Warden Werner is entitled to summary judgment in his favor.

        **C.**     **Officer Emerson, Lieutenant Washinko, and Officer Henderson**

The Amended Complaint, most charitably read, accuses the involved officers of willfully and knowingly failing to protect him against inmate violence and failing to secure him adequate medical care. ECF No. 5. "The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation marks omitted). However, "not every injury suffered by a prisoner at the hands of another translates into constitutional

liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). To sustain such a claim, the plaintiff must adduce some evidence that objectively, defendants had deprived him of his rights and that subjectively, the individual officer engaged in those acts with deliberate indifference to the inmate's needs. *See Raynor*, 817 F.3d at 127.

As to the objective component, some evidence must "establish a serious deprivation of [the inmate's] rights in the form of a serious or significant physical or emotional injury" or substantial risk of injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). For the subjective component, some evidence must show that the officers acted with "a sufficiently culpable state of mind" which includes "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994). A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (internal quotation marks and citation omitted); *see also Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024).

Importantly, where prison officials respond reasonably to a risk, they cannot be held liable for an Eighth Amendment violation. *Farmer*, 511 U.S. at 844. During inmate altercations, one reasonable response is to "began immediate preparations to safely intervene" as soon as officers learn of the risk. *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (*en banc*). By contrast, an officer's failure to take any action in an ongoing inmate altercation despite reasonable opportunity

to do so can amount to deliberate indifference. *See id.; see also Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). But in no event does the Eighth Amendment place a constitutional duty on an officer to intervene if doing so would risk physical harm to the officer. *Raynor*, 817 F.3d at 128; *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016).

When viewing the record most favorably to Foster, the Court cannot conclude that any of the officers failed to protect Foster with deliberate indifference. When the fight broke out, Officer Emerson immediately called for backup and demanded that the inmates stop fighting. ECF No. 19-4 at 7. Within two minutes, Foster was separated from the remaining inmates. *Id.* Lieutenant Washinko next handcuffed Foster without incident and escorted him along with Officer Hendershot to the infirmary. Foster was immediately treated and transported to the hospital for additional medical care. ECF No. 19-4 at 42. Accordingly, the record amply shows that Defendants responded reasonably to altercation, removed Foster from danger, and transported him for timely treatment.

Next, as to Foster's allegation that officers had improperly handcuffed him behind his back and "dragged" him from the tier, ECF No. 5 at 5. This claim, read most charitably to Foster, essentially accuses the officers of applying constitutionally excessive force during the incident. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). *See also Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citation omitted). An Eighth Amendment excessive force claim will proceed if the officer uses force on an inmate "maliciously and sadistically to cause harm," rather than as a "good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Accordingly, to survive summary judgment, some evidence must demonstrate that the prison official acted with a sufficiently culpable state of mind," and that the "deprivation suffered

[by], or injury inflicted on, the inmate was sufficiently serious." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (quoting *Williams*, 77 F.3d at 761).

When viewing the record most favorably to Foster, nothing suggests that any of the officers acted with the requisite culpability. The record undisputably shows that Foster had been cuffed behind his back, but not violently nor in a manner to cause him additional injury. ECF No. 19-5. Nor is there any evidence that officers "dragged" Foster anywhere. *Id.* In short, nothing supports that the officers acted sadistically or maliciously with an intent to harm Foster rather than quell the fracas. *Id.* Summary judgment, therefore, is granted in the officers' favor on the Eighth Amendment claim.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion is granted. A separate Order follows.

7/31/25
Date

/S/
Paula Xinis
United States District Judge